ORIGINAL

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
SUWANNEE AMERICAN CEMENT LLC,
VCNA PRESTIGE READY-MIX FLORIDA,
INC., and VOTORANTIM CIMENTOS NORTH
AMERICA, INC.,

                    Plaintiffs,            11 Civ. 3899 (LLS)

     - against -                           OPINION AND ORDER

ZURICH INSURANCE COMPANY, LTD.,
ZURICH AMERICAN INSURANCE COMPANY,
and AMERISURE INSURANCE COMPANY

                    Defendants.
------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8·3·12

Plaintiff cement manufacturers seek declaratory relief and damages from defendant insurers' refusal to defend them against two antitrust suits prosecuted in the U.S. District Court for the Southern District of Florida, which alleged that plaintiffs fixed prices, allocated customers, restricted supply, and concealed their conspiracy in violation of the Sherman Act, Clayton Act, and the Florida Deceptive and Unfair Trade Practices Act. Defendants' and plaintiffs' cross-motions for summary judgment raise the dispositive question whether clauses covering liability for inflicting "personal and advertising injury" required the insurers to defend the manufacturers against allegations that to conceal their antitrust conspiracy

they publicly misstated that market forces, rather than anticompetitive conduct, drove them to increase their prices.

## BACKGROUND

In the fall of 2009, direct purchasers and indirect purchasers of cement and concrete filed class action antitrust lawsuits against manufacturers of concrete in Florida, charging them with conspiratorial price-fixing. The direct purchaser class actions were consolidated into the "Direct Purchaser Action," and the indirect purchaser class actions into the "Indirect Purchaser Action," both in the U.S. District Court for the Southern District of Florida. The present plaintiffs (or a predecessor) were among the defendants in both actions, although Suwannee and VCNA were later dismissed from both suits. Both consolidated class actions (the "Underlying Actions") were settled while this motion was pending, so this case concerns only whether the insurers must bear all or part of the costs of defending them.

### A. Allegations in the Underlying Actions

The Direct Purchaser Action alleges that the manufacturers engaged in the following anticompetitive actions:

> 1. This case arises from an unlawful conspiracy among vertically-integrated manufacturers of Portland cement ("Cement") and ready-mix concrete and concrete block (together, "Concrete"), to fix, raise, stabilize, and/or maintain prices of and allocate customers and markets for Cement and Concrete in the

> State of Florida, in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act. As a result of this illegal conspiracy, Defendants charged supra-competitive prices for Cement and Concrete sold throughout the State of Florida, thereby injuring Plaintiffs and members of the proposed Classes (defined below). . . .
>
> 5. Defendants conspired to fix the prices of Cement and Concrete at artificially-inflated levels by agreeing on the amount and timing of price increases, restricting supply, allocating customers and territories, and attempting to eliminate competition from the ICPs, among other anticompetitive acts.

Direct Purchaser Second Am. Compl. ¶¶ 1,5. That complaint in paragraphs 100 through 144 elaborates (as does the third amended complaint of the Indirect Purchasers, ¶¶ 1-3,5,124) on the manufacturers' anticompetitive acts and describes the purpose of their false statements on which this present case rests:

> 212. During the Class Period, Defendants repeatedly attributed dramatic price increases to rising fuel and input costs, when in fact these costs did not justify the price increases, or to Cement and Concrete shortages or plant shutdowns, which were in fact artificially-created or nonexistent. <u>These statements were a pretext to conceal Defendants' conspiracy to fix prices of Cement and Concrete</u>.
>
> 213. Defendants' purported reasons for price increases of Cement and Concrete were materially false and misleading and <u>were made for the purpose of concealing Defendants' anticompetitive scheme as alleged in this Complaint</u>.
>
> 214. Plaintiffs and members of the Classes reasonably relied on the Defendants' materially false or misleading explanations for increases in the prices of Cement and Concrete, and plaintiffs and members of the Classes were lulled into believing that the increases were the result of normal competitive market forces,

rather than the product of Defendants' collusive activity.

Id. at ¶¶ 212-214 (emphases added).

Those allegations are echoed in the Indirect Purchasers' complaint, ¶¶ 225-26 and particularly ¶ 224 (emphasis added):

> 224. During the Class Period, Defendants repeatedly attributed dramatic price increases to rising fuel and input costs, when in fact these costs did not justify the price increases. <u>These statements were a pretext to conceal Defendants' conspiracy to fix prices of Cement and Concrete</u>.

The Underlying Actions claimed that the manufacturers' statements concealed the anticompetitive conspiracy; not that they were misappropriated from some other author, or published to stimulate sales. Yet the latter is the rationale concocted by the manufacturers to require the insurance companies to defend them against the conspiracy charges in the Underlying Actions.

B. **The Insurance Policies**

All of the plaintiffs seek coverage under two sets of insurance policies: a master commercial general liability policy issued by defendant Zurich Insurance Company ("Zurich") covering the years November 1, 2003 through November 1, 2009, and local commercial general liability policies issued by defendant Zurich American Insurance Company, Ltd. ("Zurich American") covering

4

the period August 1, 2005 through November 1, 2009. Suwannee also seeks coverage under a general commercial liability policy issued by defendant Amerisure Insurance Company ("Amerisure") covering the period April 30, 2004 through April 30, 2005.

### 1. The Zurich American and Amerisure Policies

The policies issued by Zurich American and Amerisure both define "personal and advertising injury" in the following provision (in identical language because it is an industry standard form):

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f. The use of another's advertising idea in your "advertisement"; or
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Facially, none of those include violations of the federal antitrust laws.

The manufacturers argue that the complaints in the Underlying Actions impose the insurers' duty to defend under subdivision (f) of the "advertising injury" clause because they cover "use of another's advertising idea in your 'advertisement.'" Specifically, the manufacturers contend that their public misstatements can be viewed as "advertisements" expressing the "advertising idea" of promoting concrete sales by offering false innocuous explanations of their conspiratorially-fixed high prices for concrete. The manufacturers say that it could be, and the clause would cover, that they got that idea from another co-conspirator: thus their use of it would be "the use of another's advertising idea in [their] 'advertisement.'" (The defendant insurers say, and I hold, that in any event the clause does not apply when the "other" acquiesces in its use.)

### 2. The Zurich Policy

The Zurich policy provides in relevant part:

**5.12.1   Exclusions**

> This extension[1] does not apply to: . . .
>
> c) Advertising Injury arising out of the willful violation of criminal or penal statute, regulation or ordinance committed by or with the knowledge or consent of the Insured.

Endorsement No. 11 to the Zurich Policy pp. 1-2.

---

[1] The "Advertising Injury" coverage was an addition ("extension") to the general commercial liability coverage and was contained in a November 30, 2005 amendment to the Zurich policy.

Conspiracies in restraint of trade are illegal, and every person who engages in one is guilty of a felony under 15 United States Code § 1.

## DISCUSSION

Under New York law, "The duty to defend is triggered whenever the allegations in the complaint fall within the risk covered by the policy; thus, if, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured." City of Johnstown, N.Y. v. Bankers Standard Ins. Co., 877 F.2d 1146, 1148 (2d Cir. 1989) (internal quotation marks and brackets omitted). Florida law is similar. Eastpointe Condo. I Ass'n v. Travelers Cas. & Sur. Co. of Am., 664 F. Supp. 2d 1281, 1285-86 (S.D. Fla. 2009) (applying Florida law), aff'd 379 F. App'x 906 (11th Cir. 2010) ("An insurer's duty to defend is based entirely on the facts and legal theories alleged in the pleadings and claims against the insured," and "As long as the complaint alleges facts which create potential coverage under the policy, a duty to defend is triggered.").

Every court that has examined the issues in this case has concluded that the advertising injury clauses in similar policies do not provide coverage for the defense of the underlying antitrust suits. Not all of the reasons given in all

7

of the lawsuits fit this case sufficiently to merit much discussion in this case, which is disposed of by two clear principles.

### A. The Words "Of Another" Mean They Were Misappropriated

To impose the duty to defend under the Zurich and Amerisure policies, the Underlying Actions must plead injury arising out of the manufacturers' "use of another's 'advertising idea' in their advertisement." There is no injury in the use if the "other" consents to it. For there to be the necessary injury, the idea must be misappropriated, i.e., wrongfully taken or made use of "without authority or right," Am. Employers' Ins. Co. v. DeLorme Pub. Co., 39 F. Supp. 2d 64, 77 (D. Me. 1999) (internal quotation marks omitted). Thus there is no Advertising Injury here: even if the idea of the false public statements came from a co-conspirator, they were used with his permission. There was no misappropriation.

As stated by the Seventh Circuit Court of Appeals in an identical case, it is

> . . . clear that coverage is limited to liability to the "other" whose advertising idea is used by the insured without the "other's" permission. That is what "misappropriation" is; . . . the understanding [is] that using someone else's idea with that someone's consent is not misappropriation.

Rose Acre Farms v. Columbia Cas. Co., 662 F.3d 765, 768-769 (7th Cir. 2011) (alterations mine).

8

The District Court in Rose Acre held:

> The policy states that the advertising injury must arise out of one of the enumerated 'offenses'—in this case, 'the use of another's advertising idea in your 'advertisement.' We are hard-pressed to understand how use of a co-defendant's idea, as opposed to one of the plaintiffs, could be considered an 'offense.' Thus, to adopt Rose Acre's interpretation of the term 'of another,' the Court would effectively be required to re-write the insurance contract, which (as even Rose Acre concedes) courts are loathe to do.

Rose Acre Farms, 772 F.Supp.2d 994 (S.D. Ind. 2011), aff'd 662 F.3d 765.

The Underlying Actions do not allege that the manufacturers used the idea of another, much less misappropriated it, and neither Zurich American nor Amerisure had a duty to defend them against those actions. See Champion Lab., Inc. v. Am. Home Assur. Co., 09-Civ-7251 (AJS), 2010 WL 2649848 at * 5 (N.D. Ill. Jun. 30, 2010) ("Under Illinois law, the use of an another's advertising idea 'occurs when a business wrongfully takes a competitor's idea about the solicitation of business.' . . . no where in the Aftermarket Filters Antitrust Litigation class action complaints do the direct or indirect purchasers accuse Champion of using Purolator's, another competitor's, or plaintiffs' advertising ideas to sell their engine filters"); Trailer Bridge, Inc. v. Illinois Nat. Ins. Co., 657 F.3d 1135, 1139 (11th Cir. 2011) ("We reject Trailer Bridge's contention that the use of a co-defendant's (and alleged co-conspirator's)

9

idea—as opposed to the idea of a plaintiff in the underlying antitrust action—could qualify as an 'offense' under the Policy.").

### B. The Criminal Acts Exclusion Forecloses Coverage Under the Zurich Policy

Under New York law, policy exclusions "must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction." Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 311, 476 N.E.2d 272, 275 (1984). The burden rests on the insurer to establish that the pleadings to be defended are "cast solely and entirely within the policy exclusions" and are not subject to any other reasonable interpretation which would allow coverage. Id. Similarly, under Florida law, "Where the application of one or more policy exclusions applies to the face of the complaint, no duty to defend exists, even if the complaint alleges facts that would otherwise give rise to a covered claim." Chicago Title Ins. Co. v. Northland Ins. Co., 31 So. 3d 214, 216 (Fla. Dist. Ct. App. 2010).

The criminal acts exclusion in the Zurich policy is specific and clear: it excludes coverage for "Advertising Injury arising out of the willful violation of criminal or penal statute, regulation or ordinance committed by or with the knowledge or consent of the insured."

As stated of the similar provision in Rose Acre Farms:

> Furthermore, the policy does not apply to advertising injury that is "caused by or at the direction of the insured with the knowledge that the act [triggering liability] would violate the rights of another and would inflict 'personal and advertising injury'" or that "arise[es] out of a criminal act committed by or at the direction of any insured." Participation in a conspiracy to violate federal antitrust law is both deliberate and criminal, and is thus excluded from coverage by both provisions.

662 F.3d at 769 (brackets in original).

It of course may be true that an insurer may have to defend a whole suit where only part of its claims are covered by the policy, but in this case as in Rose Acre Farms, "the antitrust suit for which Rose Acre wants a defense makes no claim that the policy could be thought to cover." Ibid.

It makes no difference that the acts for which the manufacturers may be liable have both civil and criminal consequences, and were in Florida pursued only in civil actions. The acts are felonious: "Every person who shall make any contract or engage in any combination or conspiracy . . . shall be deemed guilty of a felony." Section 1 of the Sherman Act, 15 U.S.C. § 1, reads:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof,

> shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

Thus, the acts for which the manufacturers seek a defense are statutorily deemed felonies regardless of whether the Underlying Actions are civil or criminal, and the policy excludes coverage for advertising injury arising out of a criminal violation.

### C.  Other Reasons

Other courts rejecting claims for defenses of antitrust lawsuits under advertising injury clauses gave additional reasons.

Trailer Bridge, Inc. v. Illinois Nat. Ins. Co., 09-CV-1135 (MCR), 2010 WL 2927424 at *5 (M.D. Fla. Jul. 22, 2010) (brackets in original), aff'd, 657 F.3d 1135 (11th Cir. 2011) pointed out that the underlying actions did not claim that the "advertising idea" came from another entity, and its purpose was to conceal the conspiracy, not to increase sales. The injury in the underlying actions was antitrust injury, not advertising injury:

> Thus, it is apparent the underlying plaintiffs allege their injuries were caused by higher prices arising from price-fixing, not from the use of another's advertising idea in Trailer Bridge's advertisement. None of the damages sought by the underlying plaintiffs in the Antitrust Complaint are payments requested "because of" an advertising injury, but instead were strictly for antitrust injuries.

12

Id. at *7; see also Champion Labs., 2010 WL 2649848 at *5 (the underlying antitrust complaints "allege that the engine filter manufacturers were in collusion to fix the price of the engine filters and that the indirect and indirect purchasers' damages arise from the artificial price increases. As such, the plaintiffs' damages in the underlying lawsuit do not arise out of Champion wrongfully taking defendants' or plaintiffs' advertising ideas"); Rose Acre Farms, 772 F. Supp. 2d at 1001-1002 ("[T]he Underlying Complaints simply do not allege any injury arising out of any advertising activity on the part of Rose Acre.").

A similar analysis would apply here (the underlying complaints insisted that the purpose of the misstatements was to conceal the conspiracy, pp. 3-4 above), but is unnecessary since the clauses cannot apply in the first place, absent any proof or likelihood of misappropriation.

Sound underwriting principles disfavor indemnification for the insured's intentional misdeeds and criminal acts and, as observed in Rose Acre Farms: "It is hardly likely that parties to an insurance contract would seek to cover such a serious risk [as antitrust litigation] indirectly through an 'advertising injury' provision aimed at misappropriation and other

13

intellectual-property torts." 662 F.3d at 768 (bracketed insertion mine).

## CONCLUSION

The motions of defendants Zurich American and Zurich (Dkt. No. 37) and defendant Amerisure (Dkt. No. 40) are granted, and plaintiffs' motions (Dkt. Nos. 46 and 49) are denied.

The Clerk is directed to enter judgment dismissing the complaint with prejudice, with costs and disbursements to the defendants according to law.

Dated: New York, New York
August 2, 2012

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.